IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| RICARDO MORALES RAMIREZ | § | 03-47872 |
| UBALDA VELAZQUEZ RAMIREZ | § | |
| | § | |
| DEBTORS | § | |

MEMORANDUM OPINION ON MOTION TO RECONSIDER ORDER ON CHAPTER
13 TRUSTEE'S MOTION TO SET ASIDE ORDER FOR COMPENSATION
[Docket No. 143]

I.
INTRODUCTION

On April 17, 2006, this Court held a hearing on the Application for Compensation of Reese W. Baker (Baker) [Docket No. 117], the attorney for Ricardo and Ubalda Ramirez (the Debtors), and the Chapter 13 Trustee's Motion to Set Aside Order for Compensation [Docket No. 119]. [Transcript of April 17, 2006 Hearing, Docket No. 148.]

On August 21, 2006, the Court entered a Memorandum Opinion on Chapter 13 Trustee's Motion to Set Aside Order for Compensation. [Docket No. 139.] This Memorandum Opinion denied Baker fees because of his failure to disclose outstanding fees due from the Debtors in a previously filed bankruptcy case (Case No. 02-43129). Additionally, the Court reduced Baker's fees in the second case because some work was duplicative of work already done in the first case. On August 31, 2006, Baker filed his Motion to Reconsider Order on Chapter 13 Trustee's Motion to Set Aside Order for Compensation (the Motion to Reconsider). [Docket No. 143.]

1

## II.
## STANDARD OF REVIEW

Baker does not state the authority under which he moves for reconsideration of the Order for Compensation. Since the Motion to Reconsider was filed within 10 days after the entry of the Order for Compensation, the Court will construe the Motion to Reconsider as a motion brought under Federal Rule of Civil Procedure 59(e), as incorporated by Bankruptcy Rule 9023. *Shepard v. Int'l Paper Co.*, 372 F.3d 326, 327 n.1 (5th Cir. 2004).

As the Fifth Circuit has explained:

> Motions for new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments, which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.

*Pluet v. Frasier*, 355 F.3d 381, 384 n.2 (5th Cir. 2004) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). The Fifth Circuit has further stated that relief under Federal Rule 59(e) is an "extraordinary remedy that should be used sparingly." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted). The Fifth Circuit has explained as follows:

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.

*Id.* at 478-79 (citations and internal quotations omitted).

## III.
## ANALYSIS OF MOTION TO RECONSIDER

The Motion to Reconsider includes the following allegations of error or mistake made by this Court in the Memorandum Opinion:

2

1. In Section II.2 of the Memorandum Opinion, the court found that after the payment of the amount of $6,750 from the chapter 13 trustee to Baker, the Debtors owed Baker a balance of $1,668.50. This finding is not correctly interpreted. [Docket No. 143, ¶ 4.]

The Court is unable to decipher precisely what Baker alludes to in arguing that this finding was not "correctly interpreted," and the subsequent paragraphs do not appear related to this argument. The amount of $1,668.50 was arrived at by subtracting the $6,570.00 payment made by the Trustee in the first case from the Order Approving Fees in the first case for $8,238.50. [Docket No. 139, pg. 3.] The math is unquestionably correct. The only other possible contention that Baker could have with this finding of fact is that the Court found that it was the Debtors who owed this amount. Perhaps Baker is contending that it is more accurate to say that the amount remained owed from the estate in the first case. However, under section 11 U.S.C. § 349(b)(3), any property of the estate is revested in the entity in which it was vested prepetition. This section would apply to debts as well as property of the estate because the estate ceases to exist. *See Clark v. Comm. State Bank*, 2001 U.S. Dist. LEXIS, at *18-20 (W.D. Tex. April 10, 2001); 11 U.S.C. § 1328(a) (in a chapter 13, a debt is not discharged until completion of the plan). Once the first case was dismissed, the Debtors still owed the debt to Baker. Therefore, there was no error in stating that this was a debt owed by the Debtors, which it assuredly was after dismissal of the case.

2. In Section II.5.b, the court stated that Baker did not list himself as a creditor who received more than $600 in the 90 days preceding the filing of the second case. In Section II.5.c, the court recognized that Baker had disclosed the $1,500 received prior to filing of the second case. Baker does not understand the finding in paragraph II.5.b. Baker did disclose that he had received the $1,500 prior to the filing of the second case. If the court is finding that Baker did not disclose the receipt of $6,750 from the chapter 13 trustee prior to the filing of the second case, such finding is erroneous. Baker did *not* receive the $6,750 from the chapter 13 trustee until after the second

3

case had been filed. The disclosures on SOFA no. 3 as to amounts received *prior* to the filing of the second case are correct. [Docket No. 143, ¶ 9.]

As Baker states, the Court did acknowledge that Baker did disclose in SOFA No. 3 that he had received $1,500.00 from the Debtors prior to filing the second case.[1] Baker has failed to take notice of the portion of SOFA No. 3 that was left blank. Not only does the question ask for the amount that was paid to the creditor within 90 days preceding the commencement of the case; it also requires that the amount still owing to that creditor be listed. Not listing any amount under that section of SOFA No. 3 gives the impression that Baker had been paid in full and that no amounts were left owed to him. In reality, as Baker himself pointed out above, the $6,750.00 payment from the chapter 13 trustee had not yet been received, so at the time of filing the second case Baker would have had a claim against the Debtors for $6,738.50 ($8,238.50 - $1,500.00). It was this lack of disclosure that the Court was highlighting in Section II.5.b of the Memorandum Opinion.

3. In Section III.B, the court cites code section 329(a). Section 329(a) requires disclosure of compensation as to be paid or agreed to be paid for services rendered or to be rendered in contemplation of or in connection with *the case* by such attorney. Code section 329(a) requires disclosure for fees for *the case*, which can only mean *the current case* and not a prior case. Section 329(a) does not require disclosure of fees for a *prior* case. Such a finding by this court that section 329(a) requires disclosure of fees paid by a chapter 13 trustee for a prior case to be disclosed in the current case is an expanded reading of section 329(a) that is not correct." [Docket No. 143, ¶ 10] Baker continues, "Bankruptcy Rule 2016(b) requires compliance with section 329(a). If 329(a) only applies to disclosure of compensation for the case, then Rule 2016(b) is not applicable for compensation paid for a prior case by a chapter 13 trustee. [Docket No. 143, ¶ 11.]

---

[1] The Debtors are ultimately responsible for the accuracy of the SOFA, but in this case, Baker provided the information with respect to question no. 3 on the SOFA.

4

Baker has stated only half of the relevant language of § 329(a). The section does indeed refer to "services rendered or to be rendered *in contemplation of or in connection with* the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). However, the first sentence of that same section states that "[a]ny attorney representing a debtor in *a* case under this title, or in connection with such *a* case." (Emphasis added). Therefore, it is by no means clear, as Baker argues, that § 329(a) is limited to requiring disclosures related to the current case and no prior cases. Rather, the plain meaning of the first sentence of § 329(a) would include *any* case under title 11, not just the *present* case. *See In re Combe Farms, Inc.*, 257 B.R. 48 (Bankr. D. Idaho 2001). Additionally, the Memorandum Opinion, in discussing § 329(a), was outlining the broad policy of the Bankruptcy Code which favors transparency and disclosure whenever possible, particularly from Debtor's counsel. Indeed, this is one of the major themes of the Bankruptcy Code, and § 329(a) is just one example. Alternatively, under the circumstances in this case, it could be argued that "in contemplation of or in connection with the case" as used in § 329(a) would include the previously filed case.[2] As discussed in both the Memorandum Opinion and further below, Baker was denied a portion of his requested fees because some of the work done in the second case was duplicative of work that was already done for the first case. Therefore, when

---

[2] The meaning of "in contemplation of" was discussed in *Mayeaux*:

> A fee payment is made "in contemplation of" a bankruptcy case if the underlying professional services were rendered at a time when the debtor was contemplating bankruptcy. This subjective test is based upon the state of mind of the debtor, "i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding."

*In re Mayeaux*, 269 B.R. 614, 622 (Bankr. E.D. Tex. 2001) (quoting *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671, 675 n.3 (Bankr. N.D. Tex. 1992)).

Baker was using work product that generated in the first case, such use brought the first case within the scope of fees for the second case. Thus, at the time the second case was filed, Baker's services in the first case had been rendered "in connection with" the second case.[3]

> 4. The Court has cited cases discussing payment of attorneys fees by a debtor post petition (section III.B., pages 8 and 9). These cases do not seem to have applicability. The debtor did not transfer any funds to Baker post petition. The chapter 13 trustee paid Baker under the terms of an existing court order. To the extent that the court is considering that the fees paid to Baker by the chapter 13 trustee were the same as funds paid by the Debtors, such an interpretation is not correct. [Docket No. 143, ¶ 12.]

Baker is referring to *In re Mayeaux*, 269 B.R. 614 (Bankr. E.D. Tex. 2001), which held that, outside of any problems under § 329(a), a chapter 13 debtor does not have the authority to transfer estate property post-petition to pay attorney's fees. A careful reading of the Memorandum Opinion would show that the holding of this case was only cited for background purposes. The real reason that the Court cited this case was as an example of the Bankruptcy Code's strict disclosure rules and the underlying policy reasons that full disclosure is required–such as public perception that attorneys benefit at the expense of creditors. Further, this case was not relied upon in any other part of the Memorandum Opinion and, therefore, there is no need to reconsider any conclusion in the Memorandum Opinion.

> 5. The court also found that Baker failed to timely disclose the $1,500 paid prior to the filing of the second case. The rule 2016(b) statement was not filed until later. Since the $1,500 was disclosed in SOFA no. 3 and 9, the funds were paid for a prior case, and the funds were received prior to the filing of

---

[3] The court in *Mayeux* only determined that the payments at issue in that case did not need to be disclosed under § 329(a) because the court found that it was "payment for a debt antecedent to the filing of the petition initiating this bankruptcy case rather than a payment of fees or compensation." *Mayeaux*, 269 B.R. at 569. This Court in the Memorandum Opinion disagreed with the holding in *Mayeux*, and found that the debts here were fees or compensation that was "in contemplation of" the bankruptcy case.

> the second case, the case of *Newton* (as cited by this court) supports the fact that no further disclosure was required by Baker.

Baker has misinterpreted the Court's citation of *In re Newton*, 292 B.R. 563 (Bankr. E.D. Tex. 2003). [Docket No. 139, pg. 9.] The Court, in discussing *Newton*, was referring to the fees that "were paid after the second filing, and thus payment was not antecedent to the second filing." *Id.* (emphasis in original). This portion of the Memorandum Opinion does not make any mention of the $1,500 that Baker initially disclosed on the SOFA; the discussion is limited to those fees which were not originally disclosed and were paid after the second filing.

> 6. The court cited section 327(a). This section is not applicable to chapter 13 cases. The requirements of section 327(a) are applicable for a trustee. The code does not include the debtor as a trustee. The court cited the case of *Guttierez* and the finding of the court that section 327 does not apply to chapter 13 cases. That finding is correct. The court went on to cite Texas Disciplinary Rules of Professional Conduct. The Texas rules mandate disclosure of any interest that is materially adverse to the representation. In the case at bar, on the filing date and until Baker voluntarily elected to apply the $1,500 in funds paid prior to the filing of the second case to the case at bar, Baker was owed less than $200. An obligation of less than $200 is not generally considered material. In this case, less than $200 should not be considered material. [Docket No. 143, ¶ 17.]

Baker is correct that *In re Gutierrez*, 309 B.R. 488 (Bankr. W.D. Tex. 2004), held that § 327(a) has no application in the context of chapter 13 because it is limited, by its plain language, to attorneys hired only by the trustee and not the debtor. *Id.* at 500-501. However, *Gutierrez* only reached this issue after first analyzing whether holding a claim against the estate and concurrently representing the debtor was a conflict of interest under Texas Disciplinary Rules of Professional Conduct 1.06(b)(2). *Id.* at 497-498. Although *Gutierrez* found that, under the facts of that case, a debtor's attorney holding an unsecured claim for fees from a previously filed case did not rise to the

7

level of adversely limiting the attorney's representation in the second case, this Court in the Memorandum Opinion was not willing to be so generous. This Court believed that Baker's unsecured claim for fees from the first case did create a potential conflict of interest that was not properly addressed. The court in *Gutierrez* noted:

> A lawyer believing that Rule 1.06(b)(2) may be implicated might, in an abundance of caution, want to put to rest any concerns about conflicts of interest and could easily obtain a written waiver laying out the relevant issues for the client, and maintain that waiver in its files. A "belt and suspenders" lawyer might even attach such a consent form to its Rule 2016 disclosure.

*Gutierrez*, 309 B.R. at 499. Here, Baker did not waive his claim–an argument that he made at trial and that this Court has already rejected–and he did not obtain a written waiver from the Debtors. Therefore, even if Baker is correct and he was only owed less than $200, this Court initially found –and now finds no grounds to reconsider–that such a claim against the estate made Baker a creditor and was a current conflict of interest under Texas Disciplinary Rules of Professional Conduct 1.06(b)(2). The Court simply did not rely at all upon § 327(a) in reaching its conclusion. The failure to disclose this conflict and the violation of Rule 1.06(b)(2) provided part of the basis upon which the Court decided to not allow certain fees requested by Baker.

7. In reviewing the reasonableness of the fees, this court did not appear to account for many services in the second case that were not duplicative of the services in the first case. In reality, there were few, if any, duplicative services. The services are set forth in detailed invoices. For example, the fees for the relief from stay by Sterling Bank in the second case are not duplicative. If counsel had taken no actions, the stay would have been lifted. Counsel got no fees for the sale and disposition of assets category. These fees were not duplicative. The fees for claim objections were not duplicative. The fees for meeting with the clients and completing the plan of reorganization was not duplicative–there was no confirmed plan in the first case. [Docket No. 143, ¶ 20.]

The Memorandum Opinion clearly states under Section III.D that the reduction in fees from Baker's fee application was a result of (1) weighing the lodestar factors; (2) the fact that some requested fees were duplicative of the first case; and (3) Baker's failure to make adequate and timely disclosures of the monies received from the Debtor. [Docket No. 139, pg. 21.] The Court never stated in the Memorandum Opinion that all of the fees Bakers highlights in the Motion to Reconsider were duplicative, but rather specifically listed certain fees that it deemed were duplicative. This means that any fees that were not awarded in the Memorandum Opinion and were not discussed as being duplicative were disallowed due to Baker's failure to disclose. Therefore, Baker's argument that certain non-duplicative services were not taken into account is not persuasive.

## IV.
## CONCLUSION

The remainder of the arguments raised by Baker in the Motion to Reconsider are either too vague to be interpret (*e.g.*, "The court has misapplied certain facts from the hearing" [Docket No. 143, ¶ 2]) or simply rehash arguments that were already made by Baker at the April 17, 2006 hearing (*e.g.*, he had "effectively waived" any fees in the first case because he did not seek to recover anything [Docket No. 143, ¶ 18]). Therefore, for reasons stated above, this Court denies in its entirety Baker's Motion to Reconsider. An order will be entered simultaneously on the docket with this Memorandum Opinion.

Signed on this 29th day of December of 2006.

Jeff Bohm
U.S. Bankruptcy Judge